PEOPLE v HEARD

1. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—CROSS-EXAMI-
   NATION—CREDIBILITY.

   The prosecution is required by statute to produce all res gestae
   witnesses but is not expected to vouch for their credibility and
   may treat them as if they were called by the defense.

2. WITNESSES—CRIMINAL LAW—ACCOMPLICES—HOSTILE WITNESSES—
   IMPEACHMENT.

   A prosecutor may not cross-examine an accomplice called by him
   as a witness without first having him declared a hostile witness
   because the prosecutor is under no obligation to call an accom-
   plice.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—ACCOMPLICE—ADMISSIONS
   —CROSS-EXAMINATION—CONFESSION NOT IN EVIDENCE—IM-
   PEACHMENT.

   The better practice is to instruct the jury to disregard the
   prosecutor's cross-examination questions of an accomplice re-
   garding admissions he made in a signed confession which were
   elicited as foundation for the admission of his written confes-
   sion for impeachment purposes where the existence of the
   confession was never directly proved and it was not submitted
   for admission.

4. WITNESSES—IMPEACHMENT—PRIOR INCONSISTENT STATEMENTS—
   FOUNDATION.

   A witness may be impeached with prior inconsistent statements,
   even if he does not remember them, once the proper foundation
   is laid.

5. WITNESSES—CRIMINAL LAW—CROSS-EXAMINATION—STANDARDS—
   OFFENSIVE ERROR—HARMLESS ERROR—REASONABLE DOUBT.

   The standard for determining whether reversible error was com-
   mitted in erroneously allowing the prosecution to cross-exam-

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 58 Am Jur, Witnesses §§ 633, 860 et seq.
[5] 58 Am Jur, Witnesses §§ 631, 632.
[6] 21 Am Jur 2d, Criminal Law §§ 292, 330.

ine its own witnesses is whether the error is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless or whether it was harmless beyond a reasonable doubt.

6. JURY—CRIMINAL LAW—JURY SELECTION—JURY REPORTS—PROSECU-TORS—DEFENSE COUNSEL—INSUFFICIENT DILIGENCE.

The prosecutor is not required to come to the aid of a defense counsel who is insufficiently diligent to examine police reports on the jurors in time for jury selection where those reports were publicly available.

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted Division 1 January 16, 1975, at Detroit. (Docket No. 17691.) Decided February 10, 1975.

Robert Heard, Jr., was convicted of felony murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*Judith Munger,* Assistant State Appellate Defender for defendant.

Before: R. B. BURNS, P. J., and BRONSON and M. F. CAVANAGH, JJ.

R. B. BURNS, P. J. The Cherry Hill Bar in Detroit was robbed at gunpoint by two men. One of the bar's patrons at the time of the robbery was an off-duty policeman, Stanley Rapaski. Officer Rapaski had his service revolver with him and attempted to stop the robbery. Gunshots were exchanged; one of the thieves was wounded in the leg; and officer Rapaski was killed. After awhile,

defendant, wounded in the leg, turned himself in to the police. He was tried and convicted of felony murder. MCLA 750.316; MSA 28.548. He appeals the conviction.

During the course of defendant's trial, the prosecution called Cedric Baker as a witness. Baker was allegedly present when defendant and another man prepared to rob the Cherry Hill Bar. He was allegedly present when they returned from the robbery; and he helped them dispose of what he knew to be the fruits of the robbery. When Baker was produced at trial, the defense contended that he was an accomplice to the robbery and that, therefore, the prosecution had no right to cross-examine him like other *res gestae* witnesses. *People v Fidel*, 37 Mich App 338; 194 NW2d 732 (1971); *People v Lewis*, 47 Mich App 450; 209 NW2d 450 (1973); and *People v. Szymanski*, 52 Mich App 605; 218 NW2d 95 (1974). The prosecution relied upon MCLA 767.40a; MSA 28.980(1) for its authority to cross-examine. The defense never examined the witness.

Michigan law does require the prosecution to produce all *res gestae* witnesses. MCLA 767.40; MSA 28.980. Because it is obliged to call these witnesses, the prosecution is not expected to vouch for their credibility and may treat them as if they were called by the defense. MCLA 767.40a; MSA 28.980(1). But it is well settled that an accomplice does not have to be called. *People v Threlkeld*, 47 Mich App 691; 209 NW2d 852 (1973).

"Absent the obligation, a witness thus called becomes the people's witness and subject to the settled rules concerning the examination of any witness voluntarily called by either party." *Fidel, supra,* at 342–343.

In short, since the prosecution did not first have

Baker declared a hostile witness, it was error to allow him to be cross-examined by the prosecution.

This error was compounded because the prosecution used the cross-examination to impeach the witness. Baker could not remember anything relating to the crime even after he had been read his signed confession (out of the jury's presence). As a result, the prosecutor began to ask him, in front of the jury, if he had ever made specific admissions (extracted from the confession) to police officers. Baker always failed to remember. This line of questioning was properly objected to, but the objection was overruled on the ground that the questioning was permissible for impeachment purposes. Since the existence of such a confession was *never directly proven,* the questioning was not permissible for that purpose. 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 438, pp 538–542; 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 611, pp 791–792; and McCormick, Evidence (2d ed), § 34–37, pp 67–75. The questioning had merely laid the foundation for the admission of Baker's confession. As that was not submitted for admission, the questioning was immaterial, and the better practice would have been to instruct the jury to disregard it.

Defendant also claims that it was error to delve into the substance of Baker's prior statement once it had been determined that he could not remember either the substance or having made the statement. *People v Durkee,* 369 Mich 618; 120 NW2d 729 (1963). While there is dicta in *Durkee* disapproving of the prosecution tactic that brings a witness to the stand primarily to impeach him with otherwise inadmissible and highly prejudicial material, the rule of that case concerned the adequacy of the trial court's instruction to negate the

impact the prior statement had on establishing the substantive elements of the prosecution's case. The trial judge's instructions were far more adequate here than those in *Durkee, supra.* It is still the law in Michigan that a witness can be impeached with prior inconsistent statements, even if he does not remember them, once the proper foundation is laid. *People v Brown,* 45 Mich App 505; 206 NW2d 730 (1973); *People v Rodgers,* 36 Mich App 211; 193 NW2d 412 (1971); *Rodgers v Blandon,* 294 Mich 699; 294 NW 71 (1940); *Pringle v Miller,* 111 Mich 663; 70 NW 345 (1897); and *Smith v People,* 2 Mich 416, 417–418 (1852).

While the prosecution was erroneously allowed to cross-examine its own witness and to confront that witness with immaterial prejudicial material, we must determine if these errors were so substantial as to require a new trial. The standard to be applied here is outlined in *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709, 713 (1972), quoting from *People v Wichman,* 15 Mich App 110, 116; 166 NW2d 298, 302 (1968):

" 'First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? * * * Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt?' "

We believe we can answer both questions in favor of a finding of harmless error. This witness' time on the stand consumed a very small portion of the trial's time. There were two positive eyewitness identifications of defendant as one of the armed thieves. Defendant's fingerprints were found (on a liquor glass) at the scene of the crime exactly where the thieves had been. Defendant was seen

wounded in the leg at the robbery, and he had a gunshot wound in his leg when he turned himself in to the police a short time later. His getaway car was identified down to four digits on its license plate. Furthermore, the jury instructions in this case were more specific and potent than those in *Durkee, supra,* when directing the jury to use evidence of a prior inconsistent statement only for assessment of credibility. In short, the possible impact of the errors was miniscule, at best, when compared with the overwhelming weight of the evidence against defendant.

Defense counsel requested discovery of all information available to the prosecution regarding the prospective jurors. *People v Aldridge,* 47 Mich App 639; 209 NW2d 796 (1973). The record discloses that unlike the situation in *Aldridge, supra,* everything the defense sought was already publicly available except for whatever personal observations prosecutors had made about the jurors on the basis of their in-court behavior. Defense counsel had simply failed to examine or compile all of the information that was as available to him as to the prosecution. *Aldridge* insures that the defense has equal access to police reports on the jurors and that was done here. If defense counsel is insufficiently diligent to examine those reports before the time for jury selection, *Aldridge* does not require the prosecution to come to defense counsel's aid. With regard to personal observations of fellow prosecutors, we believe that information is protected by the work-product exception outlined in *Aldridge, supra,* at 649–650.

We have examined the other grounds for defendant's appeal and find them meritless.

Affirmed.